UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Latwan Rice, ) | Civil Action No.: 4:23-cv-01112-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | ORDER |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

I.  RELEVANT BACKGROUND

A.     Procedural History

Plaintiff filed an application for DIB in June 2020, alleging inability to work since March 16, 2020. (Tr. 18). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in August 2022 at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on November 17, 2022, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 18-29). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in February 2023, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action

in this court in March 2023. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born in November 1977 and was forty-two years old on the alleged onset date. (Tr. 28). Plaintiff had past relevant work experience as a store laborer, addresser, and blow off worker. (Tr. 27). Plaintiff alleges disability originally due to left knee condition, shoulder condition, diabetes, and depression. (Tr. 91). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of November 17, 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 18-29):

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2026.

2. The claimant engaged in substantial gainful activity during the following periods: October 1, 2021, through the date of this decision (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: Spine Disorder; Dysfunction of Major Joints (hips); Obesity; Schizophrenia; and Posttraumatic Stress Disorder (20 CFR 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can lift up to 10 pounds occasionally; stand or walk for approximately 2 hours of an 8-hour workday; sit for approximately 6 hours of an 8-hour workday with normal breaks; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, stoop, crouch, kneel, or crawl;

      is limited to occasional use of moving machinery, and exposure to unprotected heights; work is limited to simple, routine, and repetitive tasks, and the claimant can perform these tasks for two hour blocks of time with normal rest breaks during an eight hour work day; and the claimant can have only occasional interaction with the public.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8. The claimant was born on November 2, 1977, and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

9. The claimant has at least a high school education (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

12. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2020, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in evaluating NP Deel's opinions and by not including those opined limitations in the ALJ's RFC determination. (ECF No. 15). The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.  LEGAL FRAMEWORK

#### 1.  The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §

423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     **The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence."

*Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**NP Deel**[3]

Plaintiff argues the ALJ erred in evaluating NP Deel's opinions and by not including NP Deel's opined limitations in the ALJ's RFC determination. (ECF No. 15).

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 404.1520c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new

---

[3] While the SSA record table of contents and the ALJ refer to this provider as "Gerald O'Deal," Plaintiff is accurate that the provider's name is Gerald O. Deel. (Tr. 814, 1434).

regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

In July 2020, NP Deel completed a mental medical source statement form. NP Deel treated Plaintiff for schizoaffective disorder, PTSD, childhood trauma, and anxiety. (Tr. 942). NP Deel opined that Plaintiff could not reasonably be expected to regularly work a 40 hour work week without missing more than two days a month because she had "much emotional difficulty and inability to focus." (Tr. 942). Plaintiff would have increased symptoms if placed in a full-time employment setting because of "inability to release effectively." (Tr. 942). Plaintiff would be off task 70% of the day due to her

condition. (Tr. 942). Plaintiff had a moderate ability to remember very short simple instructions. (Tr. 942). Plaintiff had extreme limitations in ability to complete a normal workday and to interact appropriately with the general public. (Tr. 943). Plaintiff had a marked limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 943).

The ALJ noted what NP Deel opined: "that the claimant is essentially unable to work including that she would be off task 70% of the time in an average workday, and that she has extreme limitation in various areas including the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods," citing Exhibit B15F, which is NP Deel's July 2020 mental medical source statement form. (Tr. 26, 942-944). The ALJ found NP Deel's opinions unpersuasive. The ALJ found the opinions were not supported by any accompanying objective findings. (Tr. 26). The ALJ found the opinion was inconsistent with the record as a whole, giving an example: "although the claimant has reported mental health symptoms and has had sporadic abnormal mental status findings, including poor insight, the vast majority of her mental status findings have been essentially normal, which includes findings that her memory, attention, and concentration were intact." (Tr. 26). The ALJ cited Exhibits 11F and B35F, mental health records, as support for this finding. (Tr. 26). The following is a review of those exhibits to examine whether the exhibits relied on by the ALJ represent substantial evidence for the ALJ's finding that NP Deel's opinion is inconsistent with the record as a whole and therefore unpersuasive.[4]

---

[4] Additionally, the ALJ found the nonexamining psychological consultants' opinions persuasive and consistent with the record as a whole, including references to exam findings and Exhibit B35F, the contemporaneous mental health treatment notes. (Tr. 27).

Of note, the relevant time period is March 16, 2020 to September 30, 2021, as hemmed by the findings regarding substantial gainful activity(SGA). (Tr. 20). The alleged onset date is March 16, 2020, and the ALJ found the period of SGA to be October 2021 through June 2022. The ALJ expressly found that the remaining findings, including the RFC, only addressed the period(s) where there was not SGA. (Tr. 20).

Exhibits B11F and B35F are mental health records; several pages of notes beginning in 2015 are far outside the relevant time period. (Tr. 755, 2281-2346). The following is a summary of both exhibits but in chronological order. In February 2020, Plaintiff was seen by NP Deel. NP Deel noted a planned Xanax taper had been put into place at the prior appointment, but Plaintiff called very manic and agitated, so Xanax was not tapered. (Tr. 2348). Plaintiff had not been compliant with Seroquel or Risperdal because she stated they were expensive; Plaintiff was told they were four and nine dollars. Plaintiff became agitated upon being encouraged to comply with medication. Plaintiff stated Xanax is the only thing that works. Plaintiff was reminded other medications are more effective for her specific diagnosis. Plaintiff agreed to a Xanax taper again. Upon exam, Plaintiff had cooperative attitude, calm behavior, normal for client speech, logical thought process, appropriate affect, intact attention/concentration, and fair judgment/insight. (Tr. 2348-2349). Plaintiff's medications were Prozac, Seroquel, and Risperdal. (Tr. 2350) A March 2020 progress summary stated Plaintiff reported an increase in depressive symptoms due to medical and financial stressors. (Tr. 760, 2260).

On March 17, 2020, Plaintiff was seen by mental health. Symptoms reported by Plaintiff were anxiety, depression, flashbacks, hyperverbal, irritability, legal problems, oppositional, paranoia, trauma, and sleep disturbance. (Tr. 775, 2351). Plaintiff walked in as an emergency appointment because she wanted her Xanax increased; she stated her current dose was not helping. The current prescription pill

bottle was counted. The Xanax bottle was filled on March 3, and two weeks later, every pill of the ninety prescribed were present in the bottle. Plaintiff was asked how she knew the Xanax was not working if she had not taken the Xanax. (Tr. 776). Plaintiff stated "she knew they wouldn't because she had tried before." (Tr. 776). On May 28, 2020, Plaintiff was seen by mental health.  Plaintiff said she needed the yellow pill and the white pill was not working. (Tr. 777, 2353). Plaintiff stated she was still hearing voices and very agitated; Plaintiff denied being medication noncompliant. No medication changes were made; labwork for medication compliance was required. Plaintiff denied any ideations and was mostly concerned about the change in medication color. "I asked if she noticed the difference two months ago when she picked up the corrected dose and she states that she does not recall. She cannot state any other difficulty other than the incident three weeks ago." "[S]he is resistant to medication changes and has previously stated that she was not taking anything except the Xanax." (Tr. 777). Plaintiff examined with calm behavior, pressured, loud speech, concrete thought process, euthymic mood, appropriate affect, intact attention/concentration, and poor insight. (Tr. 778). In June 2020, Plaintiff reported no progress due to continued financial, career, and familial stressors. (Tr. 761, 2261).

On July 28, 2020, Plaintiff was seen by mental health. Plaintiff reported smoking marijuana and drinking beer on occasion. (Tr. 2355. Plaintiff reported symptoms of hallucinations, anxiety, depression, irritability, legal problems, oppositional, paranoia, and thought disorganization. (Tr. 2355). Plaintiff reported she was "alright." Plaintiff endorsed hallucinations but seemed under no acute distress at present. (Tr. 2356).

On August 20, 2020, Plaintiff was seen by mental health. Plaintiff reported only symptoms of anxiety and irritability. (Tr. 2358). Plaintiff reported that Walmart only had 1mg Xanax and not 2mg

10

Xanax, and she does not like the 1mg. Plaintiff wanted another prescription. "Prescriber refuses to give another rx to another pharmacy but does agree to adjust current rx to only 1 mg." (Tr. 2359).

On September 28, 2020, Plaintiff was seen by NP Deel himself. (Tr. 2361). Plaintiff reported being almost out of Xanax and stated she did not want the 1mg or the white Xanax and she only wanted the yellow 2mg Xanax. Plaintiff reported that was the only Xanax that helps. NP Deel told Plaintiff that he does not control what color or manufacturer the pharmacy gives her. Plaintiff denied any increased behavioral concerns, denied hallucinations, and denied manic symptoms. (Tr. 2361). Upon exam, Plaintiff had calm behavior, no hallucinations, appropriate affect, intact concentration/attention, and fair judgment/insight. (Tr. 2362).

On October 9, 2020, medication effectiveness was improving. (Tr. 2364). Current symptoms reported were hallucinations, anxiety, appetite over and under, delusions/paranoia, depression, flashbacks, flight of ideas, hyperactive/inattentive, hyperverbal, irritability, obsessive/compulsive, paranoia, thought disorganization, and trauma. (Tr. 2364). Plaintiff reported tobacco, caffeine, alcohol, and illicit drugs(marijuana); labs were positive for "benzos as prescribed" and THC as reported. (Tr. 2365). "She has gained some insight and was very pleasant." (Tr. 2365). Plaintiff reported she now has the generic Xanax "back that actually helps her and she is improving again."

On November 4, 2020, Plaintiff was seen by mental health. (Tr. 2367). Plaintiff reported less symptoms, only anxiety and depression. (Tr. 2367). Plaintiff denied hallucinations. (Tr. 2368). In December 2020, a progress report noted she showed for one appointment, there was little to no progress, and that Plaintiff reported her daughter moving back in had increased her anger and outbursts. (Tr. 2264).

On January 19, 2021, Plaintiff was seen by NP Deel. (Tr. 2369). Plaintiff reported doing well

11

on her current medications but was having a difficult relationship with her daughter. Plaintiff denied depressive, anxiety, and manic symptoms and denied hallucinations. (Tr. 2369). Upon exam, Plaintiff had calm behavior, logical thought process, appropriate affect, intact attention/concentration, and fair insight/judgment. (Tr. 2369).

On April 12, 2021, Plaintiff was seen by NP Deel. (Tr. 2371). Plaintiff reported doing well on medications but was still having conflict with her daughter. Plaintiff denied side effects and was taking medications as prescribed. (Tr. 2371). Upon exam, Plaintiff had calm behavior, logical thought processes, appropriate affect, intact attention/concentration, and fair insight/judgment. (Tr. 2371).

In June 2021, Plaintiff was seen by mental health. (Tr. 2373). Medication effectiveness was noted as working. Plaintiff denied all symptoms. (Tr. 2373). Plaintiff stated she had no problems or needs currently and denied hallucinations or psychotic symptoms. (Tr. 2374). A June 2021 progress report stated: "Claimant faces a plethora of stressors(health, familial, financial) that substantially impeded progress at times." (Tr. 2266).

In August 2021, Plaintiff was seen by NP Deel. Plaintiff expressed her worry about not making money and not being able to find a job. Plaintiff reported trying to stay on her medications and that they were helping her to manage. Plaintiff stated she had much difficulty watching her grandchildren because they are rambunctious. (Tr. 2375). Plaintiff denied medication side effects. Plaintiff had depressed symptoms and denied anxiety. (Tr. 2375). Upon exam, Plaintiff had okay mood and congruent affect, denied hallucinations, and had intact attention/concentration and fair judgment/insight. (Tr. 2376). Plaintiff's prescription was 2mg Xanax twice a day every day. (Tr. 2376). An August 2021 progress summary noted there was a slight increase in ability to think and sustain positive thoughts. (Tr. 2268).

In November 2021, Plaintiff was seen by NP Deel. Plaintiff reported some increased anxiety

over her adult children. Plaintiff was medication compliant. (Tr. 2378). Plaintiff reported symptoms of low motivation. Upon exam, Plaintiff had dissatisfied mood, denied hallucinations, had intact attention/concentration, and fair judgment/insight. (Tr. 2379). In the September 2021-November 2021 review period, the progress summary stated there were no changes because Plaintiff failed to attend sessions regularly. (Tr. 2269). In this same time period, Plaintiff's SGA began increasing.

The ALJ's finding—that NP Deel's opinions of 70% off task and extreme limitations in various areas were not supported by findings and was inconsistent with the exams in the record as a whole where Plaintiff regularly examined with intact attention/concentration as noted by others and NP Deel—is supported by substantial evidence as the records cited and discussed above provide support for the ALJ's finding and explanation of NP Deel's opinion as unpersuasive. (Tr. 26). The ALJ supported finding NP Deel's opinions as unpersuasive by reviewing the consistency and supportability factors of 20 C.F.R. § 404.1520c(b),(c), citing to treatment notes of exams during the relevant period that did not support the severity of the limitations opined. Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of the opinions. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

Within this opinion argument, Plaintiff argues[5] the ALJ erred by not including NP Deel's opinions as RFC limitations. An RFC is "an administrative assessment made by the Commissioner

---

[5] Plaintiff also argues that the ALJ's reliance on exams in addressing the 20 C.F.R. § 404.1520c factors is in direct contradiction of the ALJ finding a severe impairment at step two. (ECF No. 15 at 9). However, the ALJ followed the applicable regulations in analyzing opinions and finding opinions unpersuasive after thorough, appropriate analysis and this finding as to NP Deel is not inconsistent with findings at Step Two as Plaintiff asserts.

based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). To determine the RFC, a provider's opinion is not required. The ALJ explained why the limitations opined by NP Deel were unpersuasive and included in the RFC the limitations he found supported by the record, as the ALJ forms the RFC from the record as a whole. *See* SSR 96–8, *7; *Craig*, 76 F.3d at 595.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

November 7, 2023
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge